UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 18-22446-CIV-BLOOM/Louis
14-20558-CR-BLOOM

ISAAC SEABROOKS,

      Movant,

v.

UNITED STATES OF AMERICA,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** comes before the Court upon Movant Isaac Seabrooks' Motion to Vacate, Set Aside, or Correct Conviction and Sentence Pursuant to 28 U.S.C. § 2255 (ECF No. 1). This Motion has been referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable Beth Bloom, United States District Judge for a report and recommendation (ECF No. 14). The Motion has been fully briefed (ECF No. 10, 13). The Court has carefully reviewed the Parties' submissions and is otherwise duly advised in the premises. Upon consideration, the undersigned respectfully recommends that the Petition be **DENIED**.

## I.      BACKGROUND FACTS

On July 23, 2014, Ranger Qonsheka Smith, a park ranger working at Grapeland Park, in Miami, Florida, observed a Cadillac with two occupants, later identified as Butler and Seabrooks, enter the park grounds and parked next to an unoccupied green truck (CRDE No. 142 at 147:3–

20; 154:11–18). [1] Smith saw that the window on the driver's side was down (CRDE No. 142, at 151:20). Moments after the Cadillac parked next to the green truck, a red car pulled into the park and the occupant exited the red vehicle, changed a child's diaper, and then drove away (CRDE No. 142, at 154:13–21). After the red car left, Ranger Smith witnessed the driver of the Cadillac, later identified as Butler, exit the Cadillac, break into the green truck, and remove several items from the truck (CRDE No. 142 at 154:23–156:5). Smith immediately radioed the City of Miami Police Department to report the theft (CRDE 142 at 154:23–155:3). After the Cadillac drove away, the police arrived in the parking lot and took Ranger Smith's statement, informed her that they were going to set up a perimeter and left (CRDE No. 142 at 156:19–20). Shortly after the police left the park, the Cadillac returned (CRDE No. 142 at 160:5–10). Ranger Smith radioed the police to inform them the Cadillac had returned to the park (CRDE No. 142, at 162:7–8). The police returned to the park and blocked the Cadillac from exiting the park grounds (ECF No. 142 at 3–6).

Lieutenant Ariel Rojas, an officer with the City of Miami Police Department, arrived at the scene and along with a second police car blocked in the Cadillac. Rojas exited one of the police cars and approached the Cadillac on the driver's side and ordered the driver to exit the vehicle (CRDE No. 142 at 185:16–22). Both the Butler and Seabrooks exited the Cadillac and laid on the ground and were subsequently arrested (CRDE No. 142, at 187:19–22).

Rojas reached inside the Cadillac, which was still in drive, and put the vehicle in park (CRDE No. 142 at 187:22–25). While he was putting the vehicle in park, he was able to look inside the Cadillac and saw two firearms, one laying on the floorboard of the driver's side and the other

---

[1] Citations to pleadings in this habeas proceeding will be to ECF No. followed by the appropriate docket entry number while docket entries in Case No. 14-CR-20558-BLOOM, Seabrook's underlying federal criminal case, will be referred by "CRDE" and docket entry number.

between driver and front passenger's seat; he also saw a black pouch that was laying on top of the cushioned backrest of the passenger's seat, which contained a third firearm (CRDE No. 142 at 187:19–188:1–19).

The police called Jose Francisco Cruz, the owner of the green truck, to inform him that his truck had been broken into (CRDE No. 142 at 234:2–18). Cruz returned to where he had parked the green truck where he encountered police officers, who asked him if the truck and the three weapons recovered from the Cadillac were his (CRDE No. 142 at 234:22–24). Cruz identified the truck and firearms as his (CRDE No. 142 at 235:1–10) and saw two holes next to the lock on the truck's passenger's side (CRDE No. 142 at 230:16–17).

Orlando Merced, a police officer with the City of Miami Police Department, also responded to the park on July 23, 2014 (CRDE No. 142 at 247:23–25). Once Seabrooks had been arrested and handcuffed, Officer Merced approached him to conduct a fingerprint identification with a portable device (CRDE No. 142 at 252:9–13). Seabrooks asked Officer Merced what the device was for, to which Officer Merced responded that it was for fingerprint identification purposes and to see if Seabrooks touched the guns found in the Cadillac (CRDE No. 142 252:19–21). Seabrooks stated "Oh, well, I touched the little gun, Officer…You'll find my fingerprints on the small gun." (CRDE No. 142, 252:22–253:12).

Special Agent Rosniel Perez, an officer with the City of Miami Police Department, took a taped interview of Seabrooks after he was advised of his *Miranda rights*, and signed a waiver of rights form (CRDE No. 142 at 286–288). During his interview, Seabrooks admitted that he had been in the passenger seat of the Cadillac, that he had seen Butler with the firearms, and had received the firearms, one of which was in a black pouch, from Butler (CRDE No. 143 at 339:7–25; 340:3–18; 365:18–366:3). Seabrooks told Special Agent Perez that he opened the black pouch

3

and saw that there was a firearm inside it.  Seabrooks told Special Agent Perez that he did not want anything to do with the firearms so he placed the pouch in the console of the Cadillac (CRDE No. 143 at 341:1–6). Seabrooks maintained that the intent had been to "get money," and that he did not know Butler was going to break into the truck (CRDE No. 143 at 361:20–25). Seabrooks asked Perez what crime he was being charged with, to which Perez responded being a felon in possession of a firearm (CRDE No. 143 at 341:7–16). Seabrooks maintained that he did not possess the firearms, but rather he had briefly received them from Butler, explaining that he "didn't receive them to keep them…it's like someone gives you something an you don't know what it is and then you put it back" (CRDE No. 143 at 342:1–17).

## II.    PROCEDURAL BACKGROUND

### A.  Indictment and Trial

On August 5, 2014, Petitioner Isaac Seabrooks and his co-Defendant Nigel Butler were charged by way of an indictment of one count of being felons in possession of firearms and ammunition in or affecting interstate commerce in violation of 18 U.S.C. §§ 922(g)(1), 924(e)(1); and one count of possessing stolen firearms and ammunitions which had been shipped and transported in interstate commerce in violation of 18 U.S.C. § 922(j) (CRDE No. 13). Butler pleaded guilty to both counts in the indictment; Seabrooks proceeded to trial.

At trial, the government presented several witnesses. In relevant part, Ranger Smith testified that she witnessed the theft of items from Cruz's green truck; Lieutenant Rojas testified about capturing Butler and Seabrooks and the search of the Cadillac; and Cruz testified that he identified the firearms that were stolen as his. The Government introduced Seabrooks' post *Miranda* statements through Officer Merced and Agent Perez. The Government also introduced a stipulation, where Seabrooks stipulated to the following: (1) Seabrooks was previously convicted

4

of a felony involving the commission of theft and the possession of a firearm; (2) Butler was previously convicted of the felony offense of burglary of an unoccupied conveyance; and (3) neither Seabrooks nor Butler were legally permitted to possess a firearm or ammunition (CRDE No. 143 at 176–77).

It was the theory of the defense that Butler, not Seabrooks, was the only person who had the requisite intent to be convicted of the charged offenses and critically, Butler was the only person who possessed the stolen firearms. After the government rested, Seabrooks moved the court for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 arguing that *United States v. Edwards*, 166 F.3d 1362 (11th Cir. 1999) made clear that mere receipt and inspection of contraband is insufficient to establish possession. The Court denied the motion explaining that whether Seabrooks actually or constructively possessed the firearms was a question of fact to be decided by the jury (CRDE No. 143 at 481–82).

 At the charge conference, the government proposed providing the jury with the Eleventh Circuit's pattern jury instruction for aiding and abetting to which Seabrooks objected, arguing that the evidence did not warrant such an instruction (CRDE No. 143 at 16–25). The Court overruled Seabrooks' objection and allowed the aiding and abetting instruction to be given as to both charges, indicating that "where there are two charges, one being a possession of stolen firearm, the aiding and abetting and abetting instruction is proper with regard to Mr. Seabrooks' participation" (CRDE No. 143, at 541–43). The Court later clarified that the aiding and abetting instruction was applicable to both counts. (CRDE No. 144 at 567:3–16). The Court provided jury instructions for the commission of both offenses under 18 U.S.C. §§ 922(g) and (j), and commission of both offenses under a theory of aiding and abetting under 18 U.S.C. § 2:

> The indictment charges two separate crimes, called counts, against the Defendant. Each count has a number. You will be given a copy of the indictment to refer to

during your deliberations. Count 1 charges the Defendant with possessing a firearm and ammunition, after having been previously convicted of a felony. Count 2 charges the Defendant with possession of a stolen firearm.

I will explain the law concerning these offenses now. Possession of a firearm by a convicted felon. It is a federal crime for anyone who has been convicted of a felony offense to possess a firearm in or affecting interstate or foreign commerce. The Defendant can be found guilty of this crime only if all of the following facts are proved beyond a reasonable doubt: Number one, the Defendant knowingly possessed a firearm or ammunition in or affecting interstate or foreign commerce; and two, before possessing the firearm or ammunition, the Defendant had been convicted of a felony, a crime punishable by imprisonment for more than one year. ... It is not necessary for the Government to prove that the Defendant knew the firearm had moved from one state to another, only that the firearm did, in fact, move from one state to another.

Possession of a stolen firearm. It is a federal crime for anyone to possess a stolen firearm in or affecting interstate or foreign commerce. The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt: Number one, the Defendant possessed the stolen firearm; two, the firearm was part of interstate commerce; and three, the Defendant knew or had reason to know, that the firearm was stolen. ... It is not necessary for the Government to prove that the Defendant knew the firearm had moved from one state to another, only that the firearm did move from one state to another.

It is possible to prove the Defendant guilty of a crime even without evidence that the Defendant personally performed every act charged. Ordinarily, any act a person can do may be done by directing another person or agent or it may be done by acting with or under the direction of others.

A defendant aids and abets another person if the defendant intentionally joins with a person to commit a crime. A defendant is criminally responsible for the acts of another person if the defendant aids and abets the other person.

A defendant is also responsible if the defendant willfully directs or authorizes the acts of an agent, employee or other associate. But finding that a defendant is criminally responsible for the acts of another person requires proof that the defendant intentionally associated with or participated with the crime, not just proof that the defendant was simply present at the scene of a crime or knew about it. In other words, you must find beyond a reasonable doubt that the defendant was a willful participant and not merely a knowing spectator.

(CRDE No. 144 at 156–159); *see also* Jury Instructions (ECF No. 96).

During closing argument, the government argued that Seabrooks knowingly possessed the

firearms, as supported by his statements that he received the firearms from Butler, that he looked inside the black pouch, and placed them in the console of the Cadillac (CRDE No. 144, at 584). The government argued that Seabrooks intended to participate in the offenses as was evidenced by Butler's break into the truck and theft of the firearms, and instead of leaving, Seabrooks remained in the Cadillac and received the firearms, and placed them strategically throughout the Cadillac (CRDE No. 144 at 586–88).

During the defense closing, Seabrooks' counsel argued that only Butler was responsible for the offenses charged and that Seabrooks had been an unwilling participant, as he stated during his interview his intent had not been to break into the truck or steal firearms, rather his intent had only been to get money (CRDE No. 144 at 598, 604). Defense counsel noted that Seabrooks had never possessed the firearms; he stated that he simply received them from Butler and argued that does not constitute an exercise of physical control of the firearms (CRDE No. 144 at 598–99).

In her rebuttal closing, the prosecutor reiterated that Seabrooks was a willing participant in the offenses and noted that Seabrooks had acted a lookout as was supported by the fact driver's window was down so that Seabrooks could warn Butler if anyone was approaching the scene (CRDE No. 144 at 621–22).

After closing arguments, the jury submitted a question to the Court: whether receipt, touch, or physical inspection was considered "possession" for purpose of convicting Seabrooks of both charged offenses. *See* Jury Question (ECF No. 95). The prosecutor recommended that the Court refer the jury to the jury instructions to answer their question (CRDE No. 144, at 637:24–638:1–13). Defense counsel argued that Court should instruct the jury consistent with the defense's proposed jury instruction because it provided guidance with the issue of possession (CRDE No. 144, at 638:15–639:1–7). After hearing both arguments, the Court advised it would refer the jury

to page 9 of the jury instructions and instruct them that the law as set forth in *Edwards* explains that mere inspection standing alone is not sufficient to establish possession (CRDE No. 144 at 643:11–21). Ultimately, the jury found Seabrooks guilty on both counts (CRDE No. 97).

## B. Sentencing

A Pre-Sentence Investigation Report was issued prior to sentencing which calculated Seabrooks' offense level under the United States Sentencing Guidelines ("USSG"). The PSI set Seabrooks' base offense level of 20 pursuant to USSGG § 2K2.1(a)(4)(B), added 2 levels pursuant to USSG § 2K2.1(b)(1)(A) because the offense involved 3 or more firearms, added 2 levels pursuant to USSG §2K2.1(b)(4) because the offense involved stolen firearms, added 4 levels pursuant to USSG § 2K2.1(b)(6)(B) because he possessed a firearm or ammunition in connection with another felony offense, added 2 levels pursuant to USSG § 3C1.1 for obstruction of justice, and added 3 levels pursuant to USSG § 4B1.4(b)(3)(B) because Seabrooks was an armed career criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1). Seabrooks qualified for the enhancement because he had been convicted of armed robbery with a firearm in six separate Florida state cases. After enhancements, Seabrooks' recommended offense level was 33; his status as a career criminal raised his criminal history category from III to IV under USSG § 4B1.4(c)(3). With a recommended offense level of 33 and a criminal history category of IV, the PSI calculated an advisory guideline range between 188 and 235 months. With respect to Count I, under § 924(e), Seabrooks' status as an armed career criminal increased the statutory minimum term of imprisonment to 15 years and the maximum to a life term. The statutory maximum penalty applicable to Count 2 of 10 years was unchanged by Seabrooks' status as an armed career criminal.

At the sentencing hearing, Seabrooks objected to recommendations in the PSI, arguing that he qualified for a 2–level decrease for his minor role in the offenses under USSG § 3B1.2; that the

2–level enhancement for obstruction of justice was not supported by the evidence; and that he did not qualify for the armed career criminal enhancement because his armed robbery convictions did not qualify as violent felonies under the ACCA (CRDE No. 122).

The Court granted Seabrooks' request for a 2–level reduction due to his minor role in the offenses and sustained his objection to enhancement for obstruction of justice (CRDE No. 148, at 17:5–18). The Court overruled Seabrooks' objection with respect to the ACCA explaining that his previous offenses were qualifying predicate acts under the ACCA (CRDE No. 148, at 17:19–25). The Court noted that because of the ACCA enhancement, Seabrooks' offense level and criminal history category calculated in the PSI remain unchanged (CRDE No. 148, at 18:12–15).

After considering the advisory range and the requirements of 18 U.S.C. § 3553(a), the Court sentenced Seabrooks to 188 months imprisonment on Count I and 120 months imprisonment on Count II, those terms to run concurrently.

## C.  Direct Appeal

On direct appeal to the Eleventh Circuit, Seabrooks challenged his convictions and sentences arguing that the district court erred by giving the aiding and abetting instruction because: (1) it was not supported by the evidence as to either count, (2) with respect to Count I the government did not prove, as required by *Rosemond v. United States*, 572 U.S. 65 (2014)[2] that Seabrooks had advance knowledge that Butler was going to possess a firearm or that Butler was a convicted felon; and (3) with respect to Count II, the government did not prove that Seabrooks had advance knowledge that there were firearms in the truck and that Butler intended to steal them. *See United States v. Seabrooks*, 839 F.3d 1326, 1333–37 (2016). Seabrooks also argued that the

---

[2] In *Rosemond*, the Supreme Court held that to convict a defendant of a violation of § 924(c) for the use of a firearm during a drug trafficking crime, the government must prove beyond a reasonable doubt that the aider and abetter had advance knowledge that the principal would use or carry a gun during the commission of the predicate drug offense. On direct appeal, Seabrooks argued that *Rosemond* should be applied to offenses under §§922(g) and (j).

aiding and abetting instruction and the government's closing confused the jury; and that the district court erred in overruling his objection to the armed career criminal enhancement because his convictions did not qualify as "violent felonies" under the ACCA. *Id*. at 1337–38.

The Eleventh Circuit affirmed Seabrooks' convictions and sentences in a published opinion. *Id*. at 1346. The appellate court held that the aiding and abetting instruction was supported by the evidence for both Counts I and II. *Id*. at 1333, 1336. Assuming *arguendo* that *Rosemond* applies to Seabrooks' convictions under § 922, the Court found that Seabrooks had the requisite knowledge of the elements of both charged offenses. The appellate court explained that *Rosemond* stands for the position that "where the offense at issue is compound, knowledge of the firearm arising after the initiation of the offense may be sufficient to support an aiding and abetting instruction," *id*. at 1335, and the evidence before the trial court showed that Seabrooks did not withdraw after realizing that Butler had stolen the firearms; rather, Seabrooks remained in the vehicle, received the firearms, and placed them in various places in the Cadillac's console. *Id*. at 1336–37. The appellate court further held that the aiding and abetting instruction did not confuse the jury as it made clear that defendant could incur liability under an aiding and abetting theory only where he participates in another person's commission of a crime. *Id*. at 1337. Lastly, the appellate court held that Seabrooks' previous convictions for armed robbery constituted violent felonies under the ACCA. *Id*. at 1338–46. Seabrooks' convictions became final on June 19, 2017, when the United States Supreme Court denied his petition for certiorari.[3] *Seabrooks v. United States*, 137 S. Ct. 2265, 198 L. Ed. 2d 704 (2017).

**D. Motion to Vacate**

On June 18, 2018, Seabrooks, represented by counsel, timely filed the subject Motion to

---

[3] *Wainwright v. Sec'y Dep't of Corr's*, 537 F.3d 1282, 1283 (11th Cir. 2007) (recognizing that a conviction becomes final the day the United States Supreme Court denies certiorari).

Vacate (ECF No. 1). The Motion sets out several grounds which Seabrooks claims warrants vacating his conviction and sentence. First, Seabrooks argues that the trial court gave the jury an erroneous aiding and abetting jury instruction because: (1) the instruction was not supported by the evidence (ECF No. 1, at 39); (2) the district court erred as a matter of law by not instructing the jury that to establish aiding and abetting of Counts I and II, the government had to prove that Seabrooks had advance knowledge that Butler intended to burglarize the truck, that there were firearms in the truck, and that Butler was a convicted felon (ECF No. 1, at 42–43); (3) the trial court erred by giving the aiding and abetting instruction because neither the instruction nor the government's closing argument specified that the aiding and abetting instruction applied to the crimes charged in Counts I and II, but not Butler's state law burglary of the truck, and that this ambiguity confused the jury (ECF No. 1, at 42); and (4) the trial court's instruction and government's closing confused the jury by redacting Butler's name from the indictment, confusing the jury to think they could convict Seabrooks of convicting himself (ECF No. 1 at 46). Seabrooks also argues that the doctrine of fair assurance requires vacating his conviction because the Court cannot be satisfied that the improper aiding and abetting instruction, coupled with the government's closing argument, did not sway the jury's verdict (ECF No. 1 at 48). Lastly, Seabrooks argues that his sentence was improperly enhanced under the ACCA because his prior convictions do not constitute "violent felonies" under the ACCA (ECF No. 1, at 52).

In Response, the Government argues that Seabrooks' Motion should be denied because: (1) all of his claims are procedurally barred as they were raised and denied by the Eleventh Circuit on direct appeal and no exceptional circumstances justify reviewing the same claims on this Motion; (2) even if Seabrooks' claims are not procedurally barred, they fail on their merits as the Eleventh Circuit correctly held that the evidence supported a jury instruction of aiding and

abetting; and (3) Seabrooks' sentence was properly enhanced under the ACCA.

On August 17, 2018, Seabrooks filed an unopposed motion to stay, requesting that the Court stay the proceedings until the United States Supreme Court issued its decision in *Stokeling v. United States*, 138 S. Ct. 1438 (April 2, 2018), because the decision would determine whether a Florida robbery conviction qualifies as a violent felony under the elements clause of the ACCA (ECF No. 6). The Court granted the motion and stayed the proceedings until issuance of the Supreme Court's decision (ECF No. 7).

On January 28, 2019, Seabrooks filed a second motion to stay, requesting a stay until the Supreme Court issued a decision in *Rehaif v. United States*, ___ S. Ct. ___, 2019 WL 166874 (cert. granted Jan. 11, 2019), because the decision would determine whether the government must prove beyond a reasonable doubt that to convict under 922(g), the defendant knew of his prohibited status at the time of the illegal conduct. Seabrooks argued that the second motion to stay should be granted because the *Rehaif* decision would be dispositive on Seabrooks' challenge to the aiding and abetting instruction (ECF No. 8). The government opposed the Motion on the grounds that even if *Rehaif* was decided favorably, it would not entitle Seabrooks to the relief herein sought (ECF No. 10). The Court denied Seabrooks' second motion to stay and directed Seabrooks to file his reply (ECF No. 11).

In Reply, Seabrooks argues that, while he had raised many of his claims on direct appeals, his challenges to the aiding and abetting instruction are not procedurally barred because: (1) the *Rehaif* decision constitutes an intervening change in controlling law such that it warrants review of Seabrooks' convictions (ECF No. 13 at 5); and (2) while he had raised the challenge to the trial court's jury instructions, the Eleventh Circuit did not actually decide whether giving the aiding and abetting instruction was erroneous and confused the jury by not specifying that the aiding and

abetting instruction was for the charged offense but not Butler's state law burglary (ECF No. 13 at 3). Seabrooks also maintains that the enhancement to his sentence under the ACCA is improper because his previous convictions do not constitute violent felonies.

On July 16, 2019, Seabrooks filed a Notice of Supplemental Authority, notifying the Court that in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), the United States Supreme Court held that for a conviction of violation of § 922(g), the government must prove beyond a reasonable doubt that the defendant knew he possessed a firearm and that he knew he belonged to prohibited category of persons barred from possessing a firearm (ECF No. 15). Seabrooks argues that the holding in *Rehaif*, while inconsistent with the law in this Circuit at the time of his trial, now requires that his conviction and sentence for Count I be vacated because the jury was not instructed that the government had to prove beyond a reasonable doubt that Seabrooks knew of Butler's prohibited felon status.

## III.   DISCUSSION

Pursuant to 28 U.S.C. § 2255, a prisoner in federal custody may move the court which imposed sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255. If a court finds a claim under § 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.*

The government argues that all of Seabrooks' claims for relief are procedurally barred from consideration in this § 2255 proceeding because they were already decided by the Eleventh Circuit on direct appeal. The law is well established that a § 2255 motion to vacate is not an opportunity

for a defendant to relitigate matters decided on direct appeal. *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000). Once a matter has been decided against a defendant on direct appeal, it cannot be relitigated on a motion to vacate unless the defendant demonstrates an intervening change of law that would make his sentence invalid or establishes an error of constitutional proportions resulting in the miscarriage of justice. *Stoufflet v. United States*, 757 F.3d 1236, 1241 (11th Cir. 2014);[4] *see also Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012) (recognizing that where there has been no intervening change in controlling law or a miscarriage of justice, a claim or issue that was decided against a defendant on direct appeal may not be the basis for relief in a § 2255 proceeding); *Soliman v. United States*, No. 8:05-cr-240-T-24MSS, 2007 WL 951735, at *3 (M.D. Fla. Mar. 28, 2007) (denying motion to vacate because defendant raised the same arguments denied on direct appeal and had not shown the existence of highly exceptional circumstances to warrant collateral review of his claims). Only a limited set of intervening changes of law warrant setting aside a ruling in the defendant's direct appeal because not all intervening changes in law have retroactive effect after a judgment of conviction has become final. *Stoufflet*, 757 F.3d at 1241. Moreover, a petitioner may obtain federal habeas review of a procedurally barred claim, without a showing of an intervening change in law, if such review is necessary to correct a fundamental miscarriage of justice. *Id*. The miscarriage of justice exception is only available if Seabrooks can show he is actually innocent of the offenses for which he was convicted. *Jones v. United States*, 153 F.3d 1305, 1308 (11th Cir. 1998). To establish actual innocence, the petitioner

---

[4] In response to the government's argument that Seabrooks' claims are procedurally barred, Seabrooks contends that the law of the case doctrine governs his claims, and his claims are not barred because they fall within the exceptions to the doctrine (ECF No. 13, at 1). However, the law of the case doctrine has not generally been extended to review of initial motions to vacate that were affirmed on direct appeal because a motion to vacate is not part of the underlying criminal case. *See Stoufflet*, 757 F.3d at 1240 (declining application of law of the case doctrine to initial Section 2255 motion to vacate because a motion to vacate a sentence is a collateral attack on a sentence that has become final, the resolution of that motion is not part of the 'single continuing lawsuit' beginning with the indictment against the defendant-movant[…].").

must establish that considering all of the evidence, it is more likely than not that no reasonable juror would have convicted the petitioner. *Id*.

Seabrooks concedes that he raised many of these same claims on direct appeal, explaining only that *Rehaif* constitutes an intervening change in the controlling law (ECF No. 13, at 5); and that the Eleventh Circuit did not decide the issue of whether the aiding and abetting instruction was prejudicial as it confused the jury by not clarifying that the aiding and abetting instruction pertained only to the federal offenses but not to Butler's underlying state-law burglary (ECF No. 13, at 3).

As discussed more fully below, Seabrooks' claims are procedurally barred as they were all decided on direct appeal and Seabrooks has not shown an intervening change in controlling law nor has he shown a miscarriage of justice. Notwithstanding, the undersigned has considered the merits of Seabrooks' claims in the sections that follow.

## 1. Aiding and Abetting Instruction

At the heart of Seabrooks' challenge to the aiding and abetting instruction is his contention that the evidence before the trial court did not support the instruction for either Count I (felon in possession of a firearm in violation of 922(g) or Count II (possession of stolen firearms in violation of 922(j)). Seabrooks' claim is procedurally barred as it was all decided on direct appeal and Seabrooks has not shown that *Rehaif* constitutes an intervening change in controlling law nor has he shown a miscarriage of justice.

A defendant can be convicted of aiding and abetting another crime so long as the evidence supports it and the jury is instructed on that offense. *United States v. Martin*, 747 F.2d 1404, 1407 (11th Cir. 1984). To prevail under a theory of aiding and abetting, the government must prove: (1) the substantive offense was committed by someone; (2) the defendant committed an act which

contributed and furthered the substantive offense; and (3) the defendant intended to aid in the commission of the offense. *United States v. Camacho*, 233 F.3d 1308, 1317 (11th Cir. 2000). However, a defendant's mere presence alone is not sufficient to uphold a conviction for aiding and abetting.

To convict a defendant of violating 18 U.S.C. § 922(g)(1), the crime charged in Count I, the government must prove that: (1) the defendant was a felon; (2) the defendant knowingly possessed a firearm; and (3) the firearm affected or was in interstate commerce. The appellate court held that the evidence supported the reasonable inference that Seabrooks intended to aid Butler in possessing the firearm. *Seabrooks*, 839 F.3d at 1336. The appellate court explained that through the open driver's side window, Seabrooks saw Butler steal the firearms from the truck, and then bring them into the Cadillac, thus Seabrooks had the knowledge to make the relevant decision to remain in the Cadillac and participate in Butler's possession of the firearms. Critically, he remained inside the vehicle, received the firearms from Butler, and placed them in the Cadillac's console. *Id.* at 1337. Moreover, assuming without deciding whether the holding in *Rosemond* extended to offenses under § 922, the appellate court found that the evidence showed that even if Seabrooks was not aware that Butler would possess the stolen firearms, the evidence demonstrated that Seabrooks did not withdraw once he realized that Butler was in possession of the firearms, and instead Seabrooks received them. The court also held that with respect to Count I, the trial court did not err by not instructing the jury that the government had to prove Seabrooks knew Butler was a convicted felon because the issue had not been decided by the United States Supreme Court or the Eleventh Circuit. *Id.* at 1336–37.

To support a conviction for violation of 18 U.S.C. § 922(j), the offense charged in Count II, the government must prove that (1) the defendant possessed a stolen firearm; (2) the firearm

was part of interstate commerce; and (3) the defendant knew or had reason to know that the firearms were stolen. On direct appeal, the court held that the aiding and abetting instruction was appropriate because it was supported by the evidence. The appellate court explained that Seabrooks saw Butler break into the green truck and stole the firearms and Seabrooks did not withdraw. *Seabrooks*, 839 F.3d at 1333. The appellate court also relied on Seabrooks' post-*Miranda* statements, in which Seabrooks acknowledged that he had seen Butler break into the Cadillac and knew that Butler had stolen the firearms as he saw one of the firearms that was not in the black pouch. *Id.* at 1334. Seabrooks also acknowledged that Butler had handed him the firearms and Seabrooks had placed the firearms in the Cadillac's console. *Id.* The Court also rejected Seabrooks' *Rosemond* argument, because the evidence demonstrated that Seabrooks had the opportunity to withdraw once he saw Butler had stolen the firearms, and instead made the decision to remain in the Cadillac and place the firearms in the car's console.

Accordingly, Seabrooks' challenge is procedurally barred as it was denied by the Eleventh Circuit on direct appeal. *See Soliman*, 2007 WL 951735, at *3 (rejecting petitioner's claim because he raised the same issues in his motion to vacate that the Eleventh Circuit had rejected on direct appeal; *see also Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (affirming district court's conclusion that petitioner's claims were not subject to further review on his motion to vacate as the same claims had been denied on direct appeal).

Seabrooks argues that his challenge to the aiding and abetting instruction is not procedurally barred because the Supreme Court's decision in *Rehaif* constitutes an intervening change in the law governing his conviction under 18 U.S.C. § 922(g) (ECF No. 13, at 5). In *Rehaif*, the Supreme Court held that the word "knowingly" in 18 U.S.C. § 924(a)(2) modifies the elements of §922(g) so that in prosecuting a defendant for being a felon in possession of a firearm, the

government must prove that the defendant knew he possessed a firearm and that he knew be belonged to the relevant category of persons barred from possessing a firearm. *Rehaif*, 139 S. Ct. at 2195–96, 2200. In *Rosemond*, the Supreme Court held that to convict a defendant of a violation of § 924(c) for the use of a firearm during a drug trafficking crime, the government must prove beyond a reasonable doubt that the defendant aider and abetter had advance knowledge that the principal would use or carry a gun during the commission of the predicate drug offense. Seabrook argues that *Rehaif* extends the ruling in *Rosemond* to the offense of aiding and abetting an offense under § 922(g), such that the government had to show Seabrooks knew of Butler's felon status (ECF No. 13, at 10; ECF No. 15, at 4).

*Rehaif* does not constitute a new rule of constitutional law as it clarified that in prosecuting a defendant under § 922(g) and § 924(a)(2), the government must prove that the defendant knew he violated each of the material elements of § 922(g), including the defendant's felon status, and its holding has not been applied retroactively to cases on collateral review. *See Yawn v. United States*, No. 8:16-cv-2745-T-33JSS, 2020 WL 224546, at *2 (M.D. Fla. Jan. 15, 2020) (denying motion to vacate because *Rehaif* did not announce a new rule of constitutional law and does not apply retroactively on collateral review) (citing *In re Wright*, 942 F.3d 1063, 1065 (11th Cir. 2019)); *compare with United States v. Reed*, 941 F.3d 1018, 1021 (11th Cir. 2019) (explaining that because Reed's sentence was on direct appeal and thus, not final, *Rehaif* could be applied retroactively).

Seabrooks claim should also be denied because to show a miscarriage of justice, he must show actual innocence. To show actual innocence Seabrooks must show that he is factually innocent of the offenses of which he was convicted not merely argue the legal insufficiency of his convictions. *Hill v. United States*, 569 F. App'x 646, 648 (11th Cir. 2014). Seabrooks contends

that he is factually innocent of Count I because the government did not show that Seabrooks knew Butler was a convicted felon as required by *Rehaif*. However, even if this were true, it is insufficient to establish actual innocence because *Rehaif* has not been applied retroactively. *See Durham v. United States*, No. 13-CR-60270, 2019 WL 5653858, at *8 (S.D. Fla. Oct. 9, 2019), *report and recommendation adopted*, No. 17-CV-62355, 2019 WL 5617936 (S.D. Fla. Oct. 31, 2019) (denying petitioner's claim of actual innocence of § 922(g) conviction because *Rehaif* is not applied retroactively to cases on collateral review); *compare with United States v. Sanders*, No. 4:14CR81-RH-CAS, 2020 WL 1876335, at *2 (N.D. Fla. Apr. 15, 2020) (considering petitioner's collateral claim that he was actually innocent of § 922(g) conviction under *Rehaif* only because the government conceded that *Rehaif* applied retroactively despite the law in the Eleventh Circuit).

### 2. Fair Assurance and Jury Confusion

Seabrooks contends that the aiding and abetting instruction coupled with the government's argument confused the jury in two ways: first, Seabrooks contends that the instruction was misleading because the Court redacted Butler's name from the indictment when it read the indictment during *voir dire*. Seabrooks argues that such redaction, in conjunction with the government's aiding and abetting argument, allowed the jury to believe it could find Seabrooks guilty of aiding and abetting himself (ECF No. 1 at 46). Seabrooks also argues that the aiding and abetting instruction coupled with the government's argument allowed the jury to think that Seabrooks could be convicted of the federal charges if the jury believed he aided and abetted Butler in the state burglary of the truck (ECF Nos. 1 at 41–42; 13 at 3–4). Seabrooks contends that these two errors render the jury instruction insufficient and critically, prevent the Court from having a fair assurance that the jury's verdict was not improperly influenced.

The government argues Seabrooks' fair assurance argument fails because on direct appeal the Eleventh Circuit held that the aiding and abetting jury instruction was legally sufficient and did not confuse the jury. In his Reply, Seabrooks explained only that the Eleventh Circuit did not expressly decide the question of whether the jury was confused as to whether Seabrooks was aiding and abetting the charged offenses or Butler's state crime (ECF No. 13 at 3).

Non-constitutional errors, like an erroneous aiding and abetting jury instruction as Seabrooks contends, are harmless if, viewing the proceedings in their entirety the Court determines that the error did not affect the verdict and can say with a fair assurance "that the judgment was not substantially swayed by the error." *United States v. Hornaday*, 392 F.3d 1306, 1315–16 (11th Cir. 2004) (applying the fair assurance harmless error test to determine whether improperly putting the 18 U.S.C. § 2 liability theory before the jury was harmless error and concluding that it was not because the evidence of guilt was overwhelming and essentially undisputed) (relying on *Kotteakos v. United States*, 328 U.S. 750 (1946)).

Seabrooks urges the Court to rely on the *Hornaday* to recommend vacating Seabrooks convictions because the Court cannot say with fair assurance that the jury's verdict was not swayed by the improper aiding and abetting instruction as is evidenced by the lack of overwhelming evidence of Seabrooks' guilt and the jury's question regarding the element of possession (ECF No. 1 at 48–51). However, Seabrooks' reliance on *Hornaday* is misplaced because in that case the Eleventh Circuit was reviewing a conviction on direct appeal and there had been no prior finding that the aiding and abetting instruction was legally sufficient. *See Hornaday*, 392 F.3d at 1308.

The Eleventh Circuit analyzed whether the aiding and abetting instruction "misstated the law or misled the jury to the prejudice of the objecting party." *Seabrooks*, 839 F.3d at 1333 (quoting *United States v. Gibson*, 708 F.3d 1256, 1275 (11th Cir. 2013)). On direct appeal, the

20

Eleventh Circuit held the instruction was legally sufficient and found there was ample evidence in the record that Seabrooks was a willful participant and assisted Butler in stealing and possessing three firearms. *See Seabrooks*, 839 F.3d at 1333–34; 1336. With respect to Count I, the appellate court held that the jury could reasonably find that Seabrooks aided Butler in the offense of felon in possession of firearms, the crime charged in Count I. *Id*. at 1336. The appellate court explained that Seabrooks had stipulated that Butler was a felon and had admitted that he received the firearms and placed them in the Cadillac's console. *Id*. The appellate court also held that in light of the evidence presented at trial, the jury could reasonably have found that Seabrooks was a willing participant and assisted Butler in the stealing and possessing of three firearms, the offense charged in Count II. *Id*. at 1334. The appellate court further explained that Seabrooks admitted he saw Butler steal firearms from the truck and walk back towards the Cadillac, and he admitted that he received the firearms from Butler. *Id*. at 1333–34. The appellate court also relied on Seabrooks' admission that he willingly remained in the Cadillac throughout the entire episode, even after he knew Butler had stolen the firearms to find that the jury could have reasonably found Seabrooks guilty of Count II. *Id*. at 1334.

The Eleventh Circuit court also held that the trial court's redaction of Butler's name during the reading of his indictment was not in error and did not mislead the jury because during trial the government, the defense, and the witnesses made references to Butler and discussed his role in the charged offenses. *Seabrooks*, 839 F.3d at 1337. The appellate court explained that the jury instructions were clear that Seabrooks could incur liability under an aiding and abetting theory only where he joins with another person in the commission of a crime. *Id*.

Accordingly, because these arguments were raised and rejected on direct appeal and Seabrooks does not argue in his Motion or Reply that his claims should not be procedurally barred

under any of the two exceptions to the doctrine (intervening change in law or miscarriage of justice), this claim is procedurally barred. *Soliman*, 2007 WL 951735, at *3.

### 3.  ACCA[5]

In his Motion, Seabrooks contends that in light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which held that the "residual clause"[6] of the ACCA was unconstitutional, his previous convictions for armed robbery in violation of Fla. Stat. § 812.13 do not constitute predicate offenses that may be used to enhance his sentence (ECF No. 1, at 53). Additionally, Seabrooks argues that his prior convictions do not qualify as violent felonies under any of the clauses of the ACCA for the reasons articulated by the petitioner in the then-pending case *Stokeling v. United States*, 138 S. Ct. 1438 (2018) (granting cert.), which would address the question of whether a Florida state robbery satisfies the elements clause of the ACCA.

For a defendant's sentence to be enhanced under the ACCA, he must have at least three earlier convictions for "violent felonies" or "serious drug offenses" at the time he is sentenced. *Baxter v. United States*, 708 F. App'x 572 (11th Cir. 2017). The ACCA defines a "violent felony" as a crime punishable for more than one year in prison that: "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). The first clause is commonly known as the "elements clause," while the second clause contains the "enumerated crimes clause" and the "residual clause." *United States v. Owens*, 672 F.3d 966, 968 (11th Cir.

---

[5] The ACCA provides that: "In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years…" 18 U.S.C. § 924(e)(1).

[6] The "residual clause" of the ACCA states that a predicate "violent felony" includes crimes that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

2012).

In 2015, the Supreme Court held in *Johnson* that the ACCA's residual clause is unconstitutionally vague. 135 S. Ct. at 2557–58, 2563. In doing so, the *Johnson* Court clarified that it was not calling into question the application of the ACCA's elements clause. *Id.* at 2563. In 2016, the Supreme Court held in *Welch* that *Johnson* had announced a new substantive rule that applies retroactively to cases on collateral review. *Welch v. United States*, 136 S. Ct. 1257, 1264–65, 1268 (2016). To succeed on a *Johnson* claim, the movant must show that it is more likely than not that it was the application of the residual clause that led to the enhancement of his sentence. *Beeman v. United States*, 871 F.3d 1215, 1221–22 (11th Cir. 2017).

On direct appeal, the Eleventh Circuit rejected Seabrooks' *Johnson* claim and held that Seabrooks' previous convictions for armed robbery and fell within the elements clause of the ACCA because the robberies involved the use of a firearm. *Seabrooks*, 839 F.3d at 1338. The court noted that the undisputed facts in the PSI indicated that in 1995, Seabrooks had been convicted of robbing with a firearm: "(1) a Payless store on September 23; (2) a Payless store on September 28; (3) another Payless store on September 28; (4) a Payless store on October 6; (5) a Texaco station on October 12; and (6) the drive-thru of a Captain Crab restaurant on October 12." *Id.* at 1332 n.2. The court then analyzed whether a Florida armed robbery conviction qualifies as a violent felony under the ACCA elements clause. *Id.* at 1339. The court held it did; explaining that the under Eleventh Circuit law Seabrooks' 1995 convictions for armed robbery, which included the requirement of "force, violence, assault, or putting in fear," was a predicate offense under the elements clause of the ACCA in that it "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* at 1339–41 (citing *United States v. Dowd*, 451 F.3d 1244 (11th Cir. 2006); *United States v. Lockley*, 632 F.3d 1238, 1245 (11th Cir. 2001)).

Because Seabrooks' challenge to the ACCA enhancement to his sentence was raised and rejected on direct appeal, this Court cannot disturb the Eleventh Circuit's ruling. *Durham*, 2019 WL 5653858, at *6. To the extent that the subject Motion argued that *Stokeling* constitutes a change in controlling precedent, that argument seems to have been abandoned. In his Reply, after the Supreme Court in *Stokeling* held that a Florida law robbery requires the same degree of force as that which is required by the ACCA's element clause, Seabrooks abandoned his reliance on the case, and instead argues that the Supreme Court did not resolve "whether robbery offenses which can be committed without any force as Florida's robbery by 'putting in fear' qualify as ACCA predicates." (ECF No. 13 at 11). Seabrooks argues that on direct appeal the Eleventh Circuit likewise did not address that question and therefore he is not barred from raising it on the subject Motion and challenges the court's reliance on *Lockley* (*id*. at 12).

Seabrooks' argument is barred as the Eleventh Circuit did address the question: the court reviewed whether Seabrooks' 1995 conviction for armed robbery qualified as a predicate offense under the elements clause, which includes the element of "putting in fear." The court, relying on *Lockely*, which held that a Florida state law robbery, even without a firearm, satisfies the act of putting in fear in the elements clause, concluded that Seabrooks convictions for armed robbery satisfied even the least culpable act of the elements clause. *Seabrooks*, 839 F.3d at 1340–41. Moreover, Seabrooks' challenge to the court's reliance on *Lockley* is misplaced, as the Eleventh Circuit recently recognized that under *Dowd* and *Lockley*: "There is no question that a conviction under § 812.13(1) is a violent felony under the ACCA's elements clause. We reached this conclusion more than a decade ago." *Welch v. United States*, No. 14-15733, 2020 WL 2181883, at *3 (11th Cir. May 6, 2020). Though on this collateral attack Seabrooks may not challenge the appellate court's holding as erroneous, to the extent the court reaches the merits of his claim, his

prior convictions unquestionably qualify as violent felonies.

## IV.   RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Seabrooks' Motion to Vacate (ECF No. 1) be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days to serve and file written objections, if any, with the Honorable Beth Bloom, United States District Judge. Failure to file objections by that date shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017).

**RESPECTFULLY SUBMITTED** in Chambers this 27th day of May, 2020.

_____
LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE

Copies Furnished To:
The Honorable Beth Bloom
Counsel of Record